IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH AZPEITIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-19-810-SM |
| ANDREW M. SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Joseph Azpeitia (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 7, 9.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings on grounds that the ALJ failed to consider his diagnosis of gastroparesis beyond step two, and to provide a proper consistency analysis. *See* Doc. 12 at 3-12.[1]

---

[1] Plaintiff argues "The ALJ's credibility determination was improper." Doc. 12, at 8 (capitalizations altered). The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Still, this

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

---

evaluation remains "the province of the finder of fact." *See Arterberry v. Berryhill*, 743 F. App'x 227, 231 n.3 (10th Cir. 2018).

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

**B.      Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

**C.      Relevant findings.**

**1.      Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 26-36; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had (a) not attained age 22 by or (b) engaged in substantial gainful activity since September 1, 2012, the alleged onset date;

(2) had severe medically determinable impairments, specifically, a Nephrotic syndrome secondary to Focal Segmental Glomerulosclerosis, Polyarthralgias, Asthma, and Depression;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the physical residual functional capacity[3] (RFC) to perform light work with the following restrictions: must avoid exposure to concentrated dust/odors/fumes/pulmonary irritants; and to have no more than occasional interaction with public, coworkers and supervisors;

(5) had no past relevant work, but could perform jobs existing in significant numbers in the national economy such as electronics worker, mail clerk, and copy machine operator; and thus

(6) had not been under a disability from September 1, 2012 through September 27, 2018:
- Based on the application for child's insurance benefits protectively filed on July 28, 2014, Plaintiff was not disabled prior to April 12, 2018, the date he turned 22 years of age;
- Based on the application for supplemental social security income protectively filed on April 15, 2014, Plaintiff is not disabled.

*See* AR 26-36.

## 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 12-19, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

---

[3] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issues for judicial review.

Plaintiff first maintains the ALJ overlooked his severe gastroparesis. Doc. 12, at 3-8. Second, he argues the ALJ erred in evaluating Plaintiff's consistency. *Id.* at 8-12.

5

**III. Analysis.**

    **A.    Consideration of gastroparesis.**

        **1.    Any step-two error was harmless.**

Plaintiff argues that the ALJ should have considered his gastroparesis as a severe impairment at step two. Doc. 12, at 3-4. He acknowledges that the ALJ's failure to do so is not reversible error since the ALJ found other impairments severe and proceeded to the remaining steps of the evaluation. *Id.* at 4 (citing *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010)); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). While the ALJ did not list gastroparesis as a severe impairment at step two, he found Plaintiff had four severe impairments and proceeded to a step-three analysis and RFC determination. AR 27-34. Because the ALJ proceeded beyond step two, his failure to explicitly include gastroparesis in his step-two analysis is not reversible error, as Plaintiff concedes. *See Carpenter*, 537 F.3d at 1266.

        **2.    Consideration of gastroparesis beyond step two.**

Plaintiff argues that what does require remand is the ALJ's failure to consider his gastroparesis beyond step two, both in his RFC assessment and

6

his findings at steps four and five. Doc. 12, at 5-7. Plaintiff states he received the gastroparesis diagnosis in 2016.[4] *Id.* at 4. He argues that despite that, "symptoms of this impairment have long existed" and "there is ample proof of [his] gastroparesis" throughout the medical record. *Id.* Plaintiff contends that he continuously reported complaints of nausea and other symptoms potentially related to his gastroparesis, from as early as October 2013. *Id.* (citing AR 246, 351, 373, 517, 960, 1292, 1436, 1544). Plaintiff further contends that he "consistently sought treatment for the symptoms related to his gastroparesis" even before receiving a diagnosis for it. *Id.* at 5.

Plaintiff argues that the ALJ should have considered the limitations Plaintiff attributes to his gastroparesis. *Id.* at 5-6. Primarily, he points to the nausea that causes him difficulty eating and which he argues will make him "either 1) have to refrain from eating any meals during the workday, 2) eat a meal and get nauseated as a result, or 3) [n]ot eat anything but still be nauseated." *Id.* at 6. In response, the Commissioner contends the ALJ did consider and discuss Plaintiff's gastrointestinal symptoms, and "none of

---

[4] The record contains no official diagnosis of Plaintiff's gastroparesis and only brief documentation of the condition: the October 11, 2016 registered dietician's report and Plaintiff's discussion of the condition in his testimony at the September 14, 2017 hearing. *See* AR 1291-94, 1725-27.

7

Plaintiff's medical providers indicated that he was at all limited by his gastrointestinal symptoms . . . ." Doc. 18, at 7-8.

In assessing the RFC, the ALJ considered Plaintiff's testimony that "he developed additional complications with gastrointestinal disease in 2017 causing chronic nausea." AR 31. He also acknowledged Plaintiff's alleged limitations that he "wait[s] for his nausea to resolve before he attempts to engage in any sustained activity." *Id.* Although the ALJ did not specifically reference Plaintiff's gastroparesis, he only needed to consider the resultant functional limitations arising from the condition, if any, to formulate Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)).

Plaintiff cannot point to any medical opinion suggesting such limitations existed from Plaintiff's symptoms. Similarly, the state agency medical experts attributed no physical or mental limitations to Plaintiff from this condition. *See* AR 66-70, 1680-89. The ALJ gave these opinions great weight. *Id.* at 32. And, the ALJ considered and acknowledged Plaintiff's testimony in the RFC

assessment, which limited him to light work with additional restrictions. *See id.* at 31. Therefore, the ALJ did not err in his RFC assessment. *See Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (where a treating physician diagnosed a condition but did not opine on the functional limitations imposed by the condition and claimant does not allege the condition is of listing-level severity, "the diagnos[i]s by [it]sel[f is] not significantly probative evidence the ALJ had to reject in order to find [the claimant] was not disabled, and therefore the ALJ did not need to discuss [it]").

The Court turns next to steps four and five—determining at step four whether, considering the RFC assessed, Plaintiff can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, Plaintiff is able to perform other work in the economy. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing *Lax*, 489 F.3d at 1084). As above, Plaintiff points to no objective medical evidence of record indicating that different or greater limitations than those the ALJ assessed would be more appropriate for someone with Plaintiff's condition.

The ALJ noted Plaintiff takes medication for his gastrointestinal symptoms. *See* AR 31 (acknowledging Plaintiff's testimony that he takes

9

medication for acid reflux). After Plaintiff's gastroparesis diagnosis in 2016, a dietician recommended a change in Plaintiff's eating habits and that Plaintiff follow certain steps to "promote gastric emptying." *Id.* at 1292-93. Among these, the dietician recommended "engaging in light physical activity." *Id.* Substantial evidence in the record supports the ALJ's decision.

### B. Evaluation of Plaintiff's consistency.

As noted, although the SSA has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2017 WL 5180304, at *3. The two-step process substantially restates the prior two-step process set forth in SSR 96-7, which the Tenth Circuit characterized as a three-step process set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). *See, e.g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

At step one of the process, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." SSR 16-3p, 2017 WL 5180304, at *3.  At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's consistency, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citations omitted); *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The Court is not to disturb an ALJ's consistency findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391).  However, these findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citations omitted).  An ALJ need not

conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ "failed to consider critical evidence directly related to [Plaintiff's] complaints of fatigue." Doc. 12, at 8. Plaintiff contends that the ALJ should have given greater consideration to Plaintiff's testimony that he dropped out of high school, even though he was a "model student," and could not keep his part-time job due to his fatigue symptoms. *Id.* at 8-10. The Commissioner responds that "it is reasonably discernible" that the ALJ did not find the evidence corroborated Plaintiff's claims of limiting fatigue, and that substantial evidence supports the ALJ's decision. Doc. 18, at 8. The Commissioner argues that "[t]he State agency doctors opined [Plaintiff] could perform a range of light work despite his fatigue," and Plaintiff's own treating physicians suggested "his fatigue complaints meant he needed more—not less—activity." *Id.* (citing AR 52, 68, 1019, 1024).

The ALJ acknowledged that Plaintiff's "primary assertion of disabling condition was fatigue stemming from his nephrotic syndrome." AR 31. He discussed medical reports noting fatigue as a "routine sign" and that it "play[ed] a factor in daily function." *Id.* at 32. The ALJ concluded that "the

claimant's assertion [sic] of general fatigue are warranted but not to the extent contented" and noted that "the record has not produced substantial support for the alleged fatigue . . . ." *Id.* at 33-34.

The ALJ found that based on the evidence, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 34; SSR 16-3p, 2017 WL 5180304, at *3. However, the ALJ found that Plaintiff claims of "the intensity, persistence, and limiting effects of [Plaintiff's alleged] symptoms" were not consistent with the evidence. AR 34. In finding this inconsistency and making his other findings, the ALJ cited the state agency physicians' opinions, and the opinions of Plaintiff's treating physicians, all of which support that Plaintiff's fatigue was not limiting beyond the ALJ's determination. *Id.* (citing medical opinions throughout the record); *see also id.* at 66-70, 1680-89. The ALJ weighed these opinions and other objective medical evidence, including "clinical and laboratory findings, diagnostic tests, the extent of medical treatment and relief from medication and therapy," to make his findings that the record did not support Plaintiff's claims of limiting fatigue. *Id.* at 34. Substantial evidence supports the ALJ's consistency determination.

13

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 11th day of June, 2020.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE